UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI RAMADAN,                                    Case No. 18-12765

      Plaintiff,                              Stephanie Dawkins Davis
v.                                              United States District Judge

HOME DEPOT, INC,

      Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 16]**

## I.    INTRODUCTION

On March 3, 2017, Plaintiff Ali Ramadan was shopping at the Home Depot

store in Northville, Michigan, when he was allegedly struck in the head by falling

pieces of metal trim, causing traumatic brain injury.  Ramadan filed suit against

Defendant, Home Depot U.S.A., Inc.,[1] for negligence in the Wayne County Circuit

Court on July 5, 2018, alleging that Home Depot breached its duty of care with

regard to the allegedly unstable and unsecured metal trim and permitted unsafe

conditions to exist in violation of M.C.L. § 125.536.  (ECF No. 1, PageID.11–18).

Home Depot removed the matter to this court based on diversity jurisdiction on

---

[1] Defendant states that it was improperly identified by Plaintiff as Home Depot, Inc., instead of
Home Depot U.S.A., Inc. (ECF No. 16, PageID.102).

September 6, 2018.  (ECF No. 1, PageID.1–10).  On October 3, 2019, Home Depot

filed the present Motion for Summary Judgment, moving this court to dismiss this

case.  For the reasons discussed below, this court will grant in part and deny in part

Defendant's Motion.  The court will grant summary judgment on Ramadan's

statutory claim and claim of ordinary negligence.  However, the court will not

grant summary judgment on Ramadan's premises liability claim because the

doctrine of *res ipsa loquitur* may be applicable to this case.  *See Morris v. Wal-

Mart Stores, Inc.*, 330 F.3d 854, 862 (6th Cir. 2003) (holding that "it is

inappropriate to conclude that *res ipsa loquitur* does not apply when factual

disputes remain as to how the accident occurred and whether the instrumentality

was in the defendant's control.  Because such factual disputes remain in this case,

the application of *res ipsa loquitur* is a question for the jury to decide.").

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 2017, Ramadan was shopping at the Home Depot store in

Northville, Michigan. (ECF No. 16-3, PageID.151).  While shopping, Ramadan

sought and obtained the assistance of Home Depot Customer Service Associate

James Evans to help him find a certain type of electrical outlet.  *Id.*  As Evans was

leading Ramadan down aisle two of the store toward the electrical outlets, a few

pieces of metal trim came loose from an external display ("bracket") and fell on

Ramadan's head.  *Id.*  Evans did not see the actual accident.  (ECF No. 16-5,

PageID.179, 186).  He was walking in front of Ramadan and heard something fall. *Id.*  However, Evans knows that Ramadan was hit by the metal trim.  *Id.*  Evans does not know what caused the trim to fall.  (*Id.* at PageID.181).

Evans called the assistant store manager, William Dingman, right after the accident occurred.  (ECF No. 16-5, PageID.180).  Evans also put the metal trim back into the bracket where it should have been held.  (*Id.* at PageID.183).  Evans observed that the bracket was bent when he put the metal trim back in the bracket after it hit Ramadan in the head.  (*Id.* at PageID.183).  However, Evans did not notify his manager of the bent bracket at that time.  *Id.*

Ramadan spoke with Dingman after the incident and filled out an incident report.  The report states that Ramadan was walking down the aisle, that the metal trim was not locked, and three or four metal pieces fell and hit him in the head, causing a scrape and a little bleeding.  (ECF No. 19-1, PageID.487).  Dingman filled out a general liability claim worksheet that stated that he believes Ramadan ran into the channels with his cart, and that is why the channels fell and hit him.  (ECF No. 16-7, PageID.220).  He does not recall what Ramadan told him on the date of the accident that led him to conclude that Ramadan ran his cart into the metal trim.  *Id.*  However, according to Dingman, Evans told him that Ramadan ran into the channels with his cart.  (*Id.* at PageID.221).

Ramadan took photographs with his cell phone of his injuries, the metal trim

that struck him, and a portion of the external display approximately 10 to 15 minutes after the accident occurred.  (ECF No. 16-3, PageID.154).  The photographs, the deposition testimony of Evans and Dingman, and a product information sheet identify the metal trim as a "metal surface raceway channel"—a type of wire molding that is used to conceal and mount electrical wires to a wall. (*See* ECF No. 16-9, PageID241).  Each piece of the trim is ten feet in length and weighs 47.2 ounces (2.95 pounds).  (*Id.* at PageID.245).  The trim was situated in a vertical external display attached to the permanent retail shelving unit, which consisted of a bottom base affixed to the shelving unit approximately 9-12 inches from the floor which cradled the ends of the trim and a top bracket that corralled the trim. (ECF No. 16, PageID.114).

The photographs taken by Ramadan reveal that the top bracket of the display was slightly bent at the time of the accident.  (*See* ECF No. 16-4, 16-6, 16-8). Neither Ramadan nor Evans saw the trim fall, but Ramadan believes that the raceway channels were not secure in the bracket that held them, likely because the bracket was bent.  (ECF No. 18, PageID.259).

Ramadan testified at a deposition about the accident.  (ECF No. 16-3). He stated that Evans was walking down the center of aisle two, leading the way, and that he was walking on Evans' right side.  (*Id.* at PageID.154–55).  He was talking to Evans about an electrical question, then he looked to his left and got struck by 3

4

to 4 raceway channels.  (*Id.* at PageID.152).  Ramadan testified that the raceway

channels were not secured by the bracket, but that they were on the outside of the

bracket.  *Id.* at 153.  He stated that after the accident occurred, Dingman came

over, said that the bracket that had been holding the channels was bent, and

thought that maybe  a hi-lo had hit it.  (*Id.* at PageID.154).

At his deposition, Evans testified that Home Depot's Merchandise Execution

Team (MET) is responsible for setting up the external displays that hold the

raceway channels.  (*Id.* at PageID.186).  Home Depot's Freight Team is

responsible for placing the metal raceway channels into the bracket displays.  (ECF

No.16-5, PageID.180).  Every employee is responsible for notifying management

when there is a problem with a display.  *Id.*  Evans also testified that Customer

Service Associates, like himself, are responsible for maintaining and inspecting

their assigned areas daily for safety issues.  (ECF No.16-5, PageID.186–187).

Evans was assigned to aisle two, the aisle where Ramadan was injured, on

the day of the accident.  (*Id.* at PageID.187).  He did not observe anything that

would be a safety concern as he was escorting Ramadan down aisle two of the

store.  (*Id.* at PageID.188).  Evans testified that if the raceway channels were not

secured properly in either the upper or lower bracket, then that would need to be

fixed.  (*Id.* at PageID.188–89).  Evans does not remember if Ramadan bumped into

the display and did not see Ramadan bump into the raceway channels.  (*Id.* at

PageID.184).  He also did not testify that anyone else bumped into the channels, causing them to fall.  *Id.*  Evans testified that the metal channels do not easily fall and do not just fall.  *Id.*  He stated that the channels should never have fallen on Ramadan.  *Id.*  Evans also does not believe that Ramadan caused the injuries that he sustained in the accident.  (*Id.* at PageID.185).

Evans does not know when the bracket holding the raceway channels got damaged and he did not know anything was wrong with the brackets prior to Ramadan's incident.  (ECF No. 16-5, PageID.185–86).  Evans knew of no prior incidents where the raceway channels had fallen out of the brackets.  (*Id.* at PageID.186).  However, Home Depot did repair the bracket after the accident.  (*Id.* at PageID.183).  Evans does not know what caused the raceway channels to fall. (*Id.* at PageID.181).  He does not recall saying anything about the brackets being bent, and he does not recall Dingman stating that the hi-lo drivers probably bent the display rack.  (*Id.* at PageID.182).  Evans has not been told by anyone at Home Depot if video footage of the accident exists.  (*Id.* at PageID.184).

Dingman testified that no customers had ever complained that the bracket fixtures were damaged.  (ECF No. 16-7, PageID.221).  His team never needed to replace damaged brackets before.  (*Id.* at PageID.218).  In addition, Dingman stated that he did not recall anything about the brackets being bent on the night of the accident, and he was not aware of any bent or damaged brackets on the night of

the accident.  (*Id.* at PageID.210).  However, Dingman conceded that the

photograph that Ramadan took of the bracket shows that it was bent on the night of

the accident.  (*Id.* at PageID.221).  Nevertheless, Dingman does not believe that the

bend in the bracket would make the channels become unsecure and fall out.  *Id.*

Dingman testified that in order to get the raceway channels out of the bracket

fixture, someone must pull the product out and then back again, in almost an S

shape.  *Id.*  Dingman spoke to Asset Protection—the department that handles the

store surveillance—and he does not believe there were cameras that recorded aisle

two where the accident occurred.  (*Id.* at PageID.215).  Lastly, Dingman does not

know how or when the bracket got fixed because he did not put a request in for the

bracket to be fixed.  (*Id.* at PageID.210).

As a result of the accident, Ramadan says he suffered a traumatic brain

injury and his doctor diagnosed him with post-concussive syndrome.  (ECF No.

18-4, PageID.430).  His physician assistant and doctor concluded with a reasonable

degree of medical certainty that the March 3, 2017 incident at Home Depot caused

his injuries.  *Id.*  Ramadan will require ongoing medical monitoring and medical

treatment for the traumatic brain injury.  *Id.*

Ramadan filed suit against Home Depot in the Wayne County Circuit Court

on July 5, 2018.  (ECF No. 1, PageID.13).  His complaint alleged negligence and a

statutory violation of M.C.L. §125.536.  (*Id.* at PageID. 14–15).  The language of

the complaint states, "[i]t was the duty of the Defendant to provide a safe place for business invitees . . . and to exercise due care in the operation and maintenance of said premises . . . ."  (ECF No. 16-2, PageID.136).  The complaint also states that the Defendant had a duty "to inspect for dangerous conditions[.]"  *Id.*  The complaint alleges that the Defendant "[n]egligently maintained a dangerous and defective condition on . . . the premises[,]" failed "to take precautionary measures to correct or alleviate the unsafe condition created by unstable and unsecured portions of metal trim[,]" failed "to inspect [the] premises for dangerous conditions and fail[ed] to warn Plaintiff and others  . . . of the unsafe condition . . . ."  *Id.*

Home Depot filed the instant Motion for Summary Judgment on October 3, 2019.  (ECF No. 16).  The parties filed response and reply briefs on November 14, 2019 and December 12, 2019, in accordance with the briefing schedule set by District Judge Marianne O. Battani.  (ECF Nos. 17, 18, 19).  This case was reassigned to the undersigned on January 31, 2020.  A hearing on the instant motion was held on August 6, 2020.

## III.   STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party only

needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it carries the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the

Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

In diversity cases, this court is required to apply state law in accordance with the controlling decisions of the Michigan Supreme Court. *NAS Sur Grp. v Cooper Ins. Ctr., Inc.*, 617 F. Supp. 2d 581 (W.D. Mich. 2007); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Bailey Farms, Inc. v. NOR-AM Chem Co.*, 27 F.3d 188, 191 (6th Cir. 1994). If the state Supreme Court has not yet addressed the issue presented, this court must predict how it would rule, by looking to "all available data," including state appellate decisions. *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508 (E.D. Mich. 2008); *Kingsley Assocs., Inc. v. Moll Plastic Crafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 2000).

## IV.   DISCUSSION

### a.   Statutory Claim

Ramadan claims that Home Depot breached its duties to him by permitting unsafe conditions to exist unabated in violation of Mich. Comp. Laws § 125.536 and "other laws and/or ordinances not yet known by Plaintiff." (ECF No. 1, PageID.15). Mich. Comp. Laws § 125.536 provides that "[w]hen the owner of a dwelling regulated by [the housing law of Michigan] permits unsafe, unsanitary or unhealthful conditions to exist unabated in any portion of the dwelling, . . . any occupant, after notice to the owner and a failure thereafter to make the necessary corrections, shall have an action against the owner for [] damages." M.C.L. §§

125.401, 125.536.

Home Depot argues that it is entitled to summary judgment on Ramadan's statutory claims because he cannot prove that Home Depot violated M.C.L. § 125.536 or any other statute.  Specifically, Home Depot says that M.C.L. § 125.536 is inapplicable here because it regulates owners of dwellings, *i.e.*, residential properties, not commercial businesses.  Home Depot further asserts that Ramadan has not identified any other statutes allegedly violated by Home Depot and cannot rely on generic allegations of unidentified statutes to support his claims. (ECF No. 16, PageID.119–21).

In response, Ramadan clarifies that he is asserting claims against Home Depot under the theories of ordinary negligence and premises liability.  He explains that he inadvertently included a claim under M.C.L. § 125.536 in his complaint and says that he is not relying on that statute to support his allegations against Home Depot.  (ECF No. 18, PageID.254).  Ramadan does not identify any other statutes or ordinances on which to rest his claims.

Because Ramadan has seemingly abandoned any statutory claims in this matter, the court will grant summary judgment in favor of Home Depot on Ramadan's statutory claims.

    b.  Common Law Claims

Ramadan alleges a common law claim of negligence against Home Depot.

He claims that Home Depot had a duty to provide a safe place for business invitees like him, to exercise due care in the operation and maintenance of its premises to prevent injury to its invitees, and to inspect its premises for dangerous conditions about which it knew or should have known.  Ramadan says that Home Depot breached these duties by negligently maintaining a dangerous and defective condition on its premises created by the unsecured and unstable metal trim where it knew or should have known that business invitees would traverse; by failing to take precautionary measures to correct or alleviate the condition; by failing to inspect the premises for dangerous conditions; and by failing to warn him of the unsafe condition after such time that it knew or could reasonably have known of the condition.  (ECF No. 1, PageID.14–15).

Home Depot contends that it is entitled to summary judgment because (1) Ramadan's claims sound solely in premises liability, not ordinary negligence, because they arise from a condition on the land; (2) Ramadan cannot prove that Home Depot had actual or constructive notice of the alleged dangerous condition on its premises; and (3) Ramadan's allegations of causation are based on speculation and conjecture, and he cannot prove that the slightly bent top bracket of the external display caused the wire mold raceways to fall.  (ECF No 16, PageID.121–129).

Ramadan counters that the court should not grant summary judgment to Home Depot because a genuine issue of material fact exists in this matter. Ramadan argues that he has properly alleged a claim under the theories of ordinary negligence and premises liability and that his testimony, along with the testimony of Home Depot's employees, establishes an inference of negligence against Home Depot through circumstantial evidence, which gives Ramadan the right to rely on the doctrine of *res ipsa loquitur* to overcome Home Depot's defenses of notice, speculation, and conjecture.  (ECF No. 18, PageID.254–55, 257–69).

In reply, Home Depot (1) reiterates its argument that Ramadan's claim sounds solely in premises liability; (2) argues that Ramadan cannot overcome his inability to prove that Home Depot had notice of the alleged dangerous condition by arguing that the court should infer notice based upon circumstantial evidence, because Ramadan has proffered zero evidence that Home Depot created the condition or that it had notice thereof; and (3) argues that *res ipsa loquitur* does not apply because Ramadan cannot establish two of its elements.  (ECF No. 19, Page ID.480–84).

### i. Premises Liability and/or Negligence

First, this court must determine whether Ramadan has pleaded a cause of action for premises liability, ordinary negligence, or both.  Ramadan asserts that Defendant's failure to secure the display, set up the display, or monitor the display

properly is independent conduct that can be the basis of liability under a theory of ordinary negligence.  (*See* ECF No. 18, PageID.257–58).  Home Depot argues that Ramadan's claim arises out of a condition on its premises; therefore, his claims sound solely in premises liability. (ECF NO. 123, PageID.123).

Plaintiff's complaint states that it is an action for negligence.  However, this court is not bound by the label that Ramadan has attached to his claim.  *Pugno v. Blue Harvest Farms LLC*, 930 N.W.2d 393, 401 (Mich. Ct. App. 2018).  Instead, the court should read the entire complaint and determine the nature of the claim. *Id.*  Claims based on the condition of the land/premises are solely claims for premises liability.  *Id.*  "[T]his is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis v. Trinity Continuing Care Servs.*, 822 N.W.2d 254, 258 (Mich. Ct. App. 2012).  A separate action for ordinary negligence emerges where a plaintiff alleges that injury resulted from an activity that is separate from the condition of the land. *See James v. Alberts*, 626 N.W.2d 158, 162 (Mich. 2001).

Ramadan relies on *Laier v. Kitchen* to justify his position.  702 N.W.2d 199 (Mich. Ct. App. 2005).  In *Laier*, the plaintiff/decedent was killed in an accident that occurred on the defendant's property while he was helping the defendant repair a tractor.  *Id.* at 204.  The tractor had a bucket attached to its front end, and the defendant raised the bucket in order for the plaintiff to repair it.  *Id.*  While the

plaintiff was repairing the tractor, the bucket dropped, pinning the plaintiff

between the bucket and the tractor and causing the injuries that led to the plaintiff's

death. *Id.* at 204–05. The court reasoned that the plaintiff had a claim for ordinary

negligence because he alleged that the defendant was negligent in operating and

controlling the tractor and bucket. *Id.* at 209. Therefore, the defendant's conduct

was at issue. *Id.* The court also concluded that the plaintiff had a claim for

premises liability because the plaintiff was on defendant's land as an invitee at the

time of the accident. *See id.* at 211.

Home Depot mainly relies on *Kachudas v. Invaders Self Auto Wash, Inc.*, to

defend its position. 781 N.W.2d 806, 913 (Mich. 2010). In *Kachudas*, the

Michigan Supreme Court concluded that the plaintiff's action sounded solely in

premises liability where the plaintiff slipped on the icy surface of the defendant's

car wash business. *Kachudas v. Invaders Self Auto Wash, Inc.*, 781 N.W.2d 806,

913 (Mich. 2010).

Home Depot also cites *Buhalis v. Trinity Continuing Care Services*, 822

N.W.2d 254, 258 (Mich. Ct. App. 2012) and *James v. Alberts*, 626 N.W.2d 158,

162 (Mich. 2001) to support its proposition. In *Buhalis*, the plaintiff alleged that

she was injured when she slipped and fell on ice on the defendant's premises. The

plaintiff asserted that the defendant's employees caused the dangerous condition—

the ice buildup—therefore, the defendant was liable for ordinary negligence. *Id.*

The Michigan Court of Appeals reasoned that the plaintiff was injured when she encountered a dangerous condition on the defendant's premises. *Id.* The court therefore concluded that it was a case of premises liability only, and not a case for ordinary negligence. *Id.*

The Supreme Court of Michigan reasoned that a case sounded in premises liability in *James v. Alberts*. In *James*, the plaintiff was injured when he assisted a friend in digging a trench on the friend's property. *Id.* at 159. The plaintiff tripped over a partially buried cable as he was stepping out of the trench. *Id.* at 160. The court stated that the case was solely a premises liability action. *Id.* at 162. The court reasoned that the plaintiff was claiming that he was injured by a condition of the land and not by the activity of digging the trench itself. *Id.*

Other cases further flesh out the distinction between claims that are solely grounded in premises liability and claims that also sound in ordinary negligence. The Michigan Court of Appeals concluded that the plaintiff asserted a claim solely for premises liability in *England v. Meijer, Inc.* No. 322065, 2015 WL 6161735, at *1 (Mich. Ct. App. Oct. 20, 2015). In *England*, the plaintiff slipped and fell in liquid laundry detergent that a customer spilled in one of the Meijer checkout aisles. *Id.* The plaintiff brought ordinary negligence and premises liability claims in her complaint. *Id.* The complaint alleged that the defendant had a duty to maintain its store in a safe condition free from hazards. *Id.* at *3. It further

17

asserted that the store breached its duty by not having a worker clean the spill and failing to warn people about the spill." *Id.*  The court stated, "plaintiff argues that her ordinary negligence claim differs from a premises liability claim in that it arises out of defendant's conduct in failing to clean up the known spill within a reasonable amount of time and according to its own policies." *Id.* at *4.  The court reasoned that the case was different from *Laier* because "the facts do not illustrate any affirmative conduct on behalf of defendant or its employees that caused or contributed to plaintiff's injury." *Id.*  The *England* court therefore concluded that plaintiff's complaint sounded in premises liability only and not ordinary negligence.  *Id.* at *3.

The Michigan Court of Appeals similarly found that a complaint sounded solely in premises liability in *Barriger v. Bon-Ton Dep't Stores, Inc.* No. 339317, 2019 WL 2552939, at *2 (Mich. Ct. App. June 20, 2019), *appeal denied*, 943 N.W.2d 134 (Mich. 2020).  The plaintiff in *Barriger* tripped over an area rug located in the defendant's store and fell.  *Id.* at *1.  She argued that the defendant was liable for ordinary negligence for failing to properly place and secure the rug to the store's carpet, and for failing to discover the hazardous condition of the rug. *Id.* at *2.  The court reasoned that the defendant "was not actively moving, placing, or securing the rug to the carpet when plaintiff fell, nor did any of defendant's employees actively contribute to plaintiff's fall while moving, placing, or securing

18

the rug to the carpet." *Id.*  Therefore, the plaintiff's injuries arose solely from a condition on the defendant's land and could only sound in premises liability.  *Id.*

Courts also look to the language of the complaint when determining the nature of a plaintiff's claim.  *See Wheeler v. Central Mich. Inns, Inc.*, 807 N.W.2d 909, 912 (Mich. Ct. App. 2011) (stating that "[t]erms such as 'premises possessor' and 'dangerous condition on the land' relate to the elements of a premises liability, rather than ordinary negligence, claim.").

In this case, Ramadan asserts that Home Depot's failure to secure the display bracket, set up the display, and/or monitor the display properly is independent conduct that can be the basis for liability under a theory of ordinary negligence. However, this same argument was considered and rejected by the *Buhalis*, *England*, and *Barriger* courts.  Each of these courts concluded that allegations that the defendant failed to maintain/monitor/secure a condition on its premises did not assert a separate claim of ordinary negligence.  Similarly, the *Kachudas* court declined to find an ordinary negligence claim where the plaintiff asserted that the defendant allowed ice to build up and/or failed to maintain the walk areas of its business.  The *Laier* court allowed a claim for ordinary negligence because the defendant's independent conduct of controlling the tractor was an alleged cause of the accident.  The *Laier* defendant's alleged conduct was separate and distinct from any conditions that existed on the land. Unlike *Laier*, the present case does not

19

involve separate, independent conduct.  Ramadan does not allege that a Home
Depot employee was moving/shifting the display or raceway channels when he
walked by, which caused the channels to fall and hit him.  Absent allegations of
discrete conduct that is separate from the land, Ramadan cannot maintain a cause
of action in ordinary negligence.

Further, the language of Ramadan's complaint makes it clear that his claims
are grounded in premises liability.  The complaint states that Home Depot had a
duty to operate and maintain its premises and alleges that the defendant negligently
maintained a dangerous condition on the land.  The complaint consistently repeats
words like "premises" and "dangerous/defective condition."  The *Wheeler* court
concluded that terms like these—"premises possessor" and "dangerous condition
on the land"—refer to premises liability claims.  Thus, the court concludes that
Ramadan can only assert a premises liability claim against Home Depot and
GRANTS summary judgment on his ordinary negligence claim.

ii.  Premises Liability

To successfully advance a premises liability claim, a plaintiff must show that
the defendant breached its duty to the plaintiff and that the breach was the
proximate cause of the plaintiff's damages.  *Lowrey v. LMPS & LMPJ, Inc.*, 890
N.W.2d 344, 348 (Mich. 2016).  "A premises owner breaches its duty of care when
it 'knows or should know of a dangerous condition on the premises of which the

20

invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.'"  *Id.*  (quoting *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012)).  In other words, a plaintiff must prove that the defendant had actual or constructive notice of the alleged dangerous condition.  *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 10, 890 N.W.2d 344, 349 (2016).  The Defendant does not have to present evidence of routine or reasonable inspection in order to prove that it did not have notice.  *Id.*  Rather, a defendant can show that it is entitled to summary judgment "by demonstrating that [the] plaintiff failed to present sufficient evidence of notice."  *Id.*

Home Depot argues that this court should grant summary judgment in its favor because Ramadan cannot prove that the defendant had actual or constructive notice of the alleged dangerous condition and cannot show causation.  (ECF NO. 16, PageID.124).  Ramadan counters that in place of the typical premises liability test, the doctrine of *res ipsa loquitur* allows the court to infer that negligence occurred.  (ECF No. 18, PageID.262).

Evidence in the record shows that Home Depot did not have actual notice of the bent bracket or the unsecured raceway channels.  Evans stated that he was assigned to inspect aisle two on the night of the accident and he did not notice the condition when he was escorting Ramadan down aisle two.  There is no evidence that any other Home Depot employee or representative saw the condition either.

21

Therefore, the record shows that Home Depot did not have actual notice of the accident.

A premises possessor has constructive notice of a condition when it should have known about the condition because of the character of the condition or the duration of its presence. *Lowrey*, 890 N.W.2d 344 at 350. "Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor, but where the condition is created by a third person, there is a factual question regarding whether the possessor should have reasonably discovered the condition." *Pugno*, 930 N.W.2d at 404 (quoting *Pippin v. Atallah*, 626 N.W.2d 911, 916 n.2 (Mich. 2001)).

There is no evidence in the record suggesting how long the  condition existed before Ramadan's accident.  It is also unclear who created the condition that injured Ramadan—Home Depot or a third party.  Ramadan testified that on the day of the accident, Dingman stated that a hi-lo probably hit the bracket, causing it to bend.  Further, both Ramadan and Evans testified that Ramadan did not bump into the display.  However, it is not clear if something else bent the bracket or if the bend in the bracket caused the accident.  And a plaintiff cannot only present one theory of the alleged circumstances that caused the accident if he is unable to sufficiently eliminate other theories  "to take the case out of the realm of conjecture." *Guthre v. Lowe's Home Ctrs., Inc.*, 204 F. App'x 524, 527 (6th

Cir. 2006) (quoting *Rogoszewski v. State Lanes Inc.*, No. 263876, 2006 WL 1185394, at *2 (Mich. Ct. App. May 4, 2006)).  Therefore, the evidence in the record supports the proposition that Home Depot did not have constructive notice of the alleged dangerous condition.  The record also does not provide direct evidence of the actual cause of Ramadan's accident.  For these reasons, the court concludes that Ramadan cannot survive summary judgment pursuant to the standard premises liability test.

### iii.  Res Ipsa Loquitur

However, Ramadan asserts that the evidence sufficiently supports a claim of premises liability because the doctrine of *res ipsa loquitur* applies to this case in lieu of the standard premises liability test.  (ECF No. 18, PageID.262).  Under *res ipsa loquitur*, the court may infer negligence when a plaintiff cannot prove the occurrence of a negligent act.  *Pugno*, 930 N.W.2d at 405.  "Ultimately, res ipsa loquitur is 'merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it.'" *Id.* (citing Restatement, § 328D, comment *b*, p. 157).  The doctrine can apply to premises liability claims in Michigan.  *Id.* at 405.  For *res ipsa loquitur*  to apply,

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;

(3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and

(4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

*Pugno*, 930 N.W.2d at 404.  In addition, a "plaintiff must also produce some evidence of wrongdoing beyond the mere happening of the event." *Id.*  Here, the court finds that  Ramadan has presented sufficient evidence to proceed under a theory of recovery under the doctrine of *res ipsa loquitur* to survive summary judgment.

### 1. Element One

The first element for premises liability recovery under *res ipsa loquitur* requires a showing that the event that occurred does not ordinarily happen in the absence of negligence.  *Pugno*, 930 N.W.2d at 404.  Ramadan states that the photographs he submitted show that the kind of accident that occurred does not ordinarily happen absent negligence. (ECF No. 18, PageID.266).  Home Depot argues that it is foreseeable that even properly secured raceway channels might fall from displays if struck by a loaded shopping cart. (ECF No. 19, PageID.483).

Defendant cites *Ealey v. Rockford Construction Company* and *Johnson v. Meijer* to support its argument that this accident could have happened absent negligence.  In unpublished decisions, the Western District of Michigan found and the Sixth Circuit affirmed that *res ipsa loquitur* did not apply where the handle of the plaintiff's shopping cart struck a fire extinguisher that was mounted on the wall

causing the extinguisher to fall and injure the plaintiff's toe. *Johnson v. Meijer, Inc.*, 551 F. App'x 259, 260 (6th Cir. 2014); *Ealey v. Rockford Constr. Co.*, No. 1:13-cv-802, 2015 WL 1459228, at *1 (W.D. Mich. Mar. 30, 2015).[2] The court said that *res ipsa loquitur* did not apply because it was foreseeable that a properly secured fire extinguisher could fall to the floor if a loaded shopping cart strikes it. *Johnson*, 551 F. App'x at 260; *Ealey*, 2015 WL 1459228 at *3.

Additional cases help to distinguish between the types of incidents that courts have found do not occur absent negligence. Generally tripping and/or slipping and falling can occur absent negligence. *Klos v. Perriez, Inc.*, No. 293515, 2010 WL 4630489, at *3 (Mich. Ct. App. Nov. 16, 2010) (concluding that "it is possible that falling on steps may occur in the absence of negligence."); *Rogoszewski v. State Lanes Inc.*, No. 263876, 2006 WL 1185394, at *3 (Mich. Ct. App. May 4, 2006) (stating that, "[c]ontrary to plaintiff's assertions, people do slip and fall in the absence of negligence.). This district concluded that a slip and fall that occurred in the jetway of an airport could happen absent negligence even though ice and snow inside the jet bridge caused the plaintiff to fall. *Pritchard v. Nw. Airlines, Inc.*, No. 01-CV-74566-DT, 2003 WL 27287340, at *5 (E.D. Mich. May 14, 2003), *aff'd,* 111 F. App'x 406 (6th Cir. 2004) (reasoning that, "even

---

[2] Both of these cases arise from the same incident with the same plaintiff, asserted against different defendants.

when [d]efendant is following the proper docking procedure . . . the weather may

still enter the jetway through the gap at the bottom of the jetway and the imperfect

seal provided by the jetway canopies.  Therefore, the existence of the elements

inside the jetway is not an event which ordinarily does not happen in the absence

of negligence.").

In addition, the Second Restatement of Torts  provides examples of types of

incidents that normally do not occur absent negligence, "such as when plaster

unexpectedly falls from the ceiling, when a sign falls from a building, or when a

chandelier falls from its fixture." [3] *Pugno*, 930 N.W.2d at 405.  These examples

are more similar to the incident that allegedly occurred here, i.e. where the raceway

channels fell from their fixture (i.e., the bracket) without any prior contact by

Ramadan.

The Sixth Circuit has also considered the issue pursuant to Michigan law in

*DeBusscher v. Sam's E., Inc.*, 505 F.3d 475 (6th Cir. 2007).  In *DeBusscher*, the

plaintiff was shopping at defendant's store with her three children.  *Id.* at 477.  Her

seven-year-old son walked over to a portable basketball hoop displayed in the store

and touched a part of it, causing the hoop to fall and strike the plaintiff on the head.

*Id.* at 477–78.  The defendant had failed to put sand or water in the base of the

---

[3] The Second Restatement was updated in June 2020 and now only includes plaster falling from the ceiling as an example of an incident where a court may infer negligence.

basketball hoop in order to stabilize it and prevent it from tipping over.  *Id.* at 478. The court concluded that a basketball hoop should not tip over merely because a seven-year-old touches it.  *Id.* at 481.  The court noted that the defendant conceded this point with testimony by its employee in a deposition agreeing that a seven-year-old is not supposed to be able to tip over a basketball post in the manner that occurred during the accident.  *Id.*

Ramadan's accident is not a type of accident that commonly occurs, like a slip and fall.  Indeed, it is fairly uncommon for an untouched item to fall on a customer's head while merely walking down the aisle of a store.  Therefore, this case is distinguishable from the accidents that occurred in *Klos*, *Rogoszewski*, and *Pritchard* where the courts concluded that those accidents could occur absent negligence.  Similar to the defendant's employee in *DeBusscher*, a Home Depot employee—Evans—conceded that the raceway channels should not have fallen on Ramadan.  Further, Evans testified that the raceway channels do not easily fall out of the brackets.  Dingman testified that in order to remove the channels from the brackets, someone must pull the product out and back in the shape of an S.  This evidence lends support to the conclusion that the raceway channels do not just fall absent some type of negligence since it is difficult for the channels to be taken out of the brackets.

Evans also testified that if the channels were not secured in the brackets, then that would need to be fixed. Ramadan testified that the raceway channels were not secured in the bracket on the night of the accident, that he turned to his left, and that the channels just struck him. This sequence of events supports the conclusion that an accident like this does not just occur absent negligence.

On the other hand, Defendant's argument that it is foreseeable that properly secured raceway channels might fall out of the display if struck by a loaded shopping cart is unavailing. Defendant presents no evidence that suggests that Ramadan's shopping cart struck the display. To the contrary, the deposition testimony of Ramadan and Evans confirms that Ramadan did not bump into the display. Further, testimony from Dingman and Evans asserts that the channels do not come out of the displays easily and require human manipulation to do so. Therefore, unlike *Johnson* and *Ealey*, whether this accident would be foreseeable if a loaded shopping cart had run into the display is inapposite. And the type of accident that Ramadan alleges occurred in this case—a product suddenly falling from its fixture—is the type of accident noted in the Restatement that does not ordinarily occur absent negligence.

There remains a question of fact as to whether the raceway channel was in the bracket when it fell. Defendant asserts that it is possible that a customer handled the raceway channel and then leaned it next to the external display rather

28

than placing it back in the fixture. (ECF No. 19, PageID.483). Thus, it is possible that the raceway channel was not inside of the bracket when it struck Ramadan in the head. Ramadan testified that the raceway channels were not secured in the bracket on the night of the accident. But Dingman and Evans testified that the raceway channels do not just come out of the bracket without human manipulation. If someone did leave the raceway channel outside of the bracket, there is little evidence in the record, aside from the witness testimony about what they noticed and observed on the day in question, from which to conclude how long the raceway channel was outside of the bracket (which could inform the court if Home Depot should have noticed the condition).

Nevertheless, based on the evidence in the record, the court concludes that Ramadan has presented sufficient evidence to survive summary judgment on element one of the *res ipsa loquitur* doctrine. Evidence in the record and the testimony of the parties creates a triable issue about whether the raceway channel was inside or outside of the bracket immediately before the accident occurred and whether this is the type of accident that normally occurs absent negligence.

## 2. Element Two

Element two requires a plaintiff to show that the agency or instrumentality that caused the accident was in the exclusive control of the defendant. *Pugno*, 930 N.W.2d at 404. Ramadan asserts that the testimony of Evans and Dingman shows

that this case meets element two.  (ECF No. 18, PageID.265).  Home Depot argues that Ramadan cannot prove this element because the incident took place in an area of the store that is open to the public.  (ECF No. 19, PageID.484).

Ramadan relies on *Young v. Speedway* to support his proposition.  No. 17-12279, 2018 WL 3036424, at *1 (E.D. Mich. June 19, 2018) (Cohn, J.).  The *Speedway* court concluded that *res ipsa loquitur* was applicable where a customer at Speedway gas station suffered burns after he picked up a coffee pot in a Speedway store and the pot exploded.  *Id.* at *1.  The court concluded that the coffee pot was in Speedway's exclusive control because Speedway maintained the coffee pot in its store and Speedway placed the coffee pot for its customers to use—even though any customer could use it.  *Id.* at *2.  Here, Home Depot's MET employees and the Freight team set up the brackets and placed the raceway channels into the brackets.  Thus, similar to the setup of the coffee pot in *Speedway*, the defendant set up and maintained the brackets that held the raceway channels.

Defendant asserts that Michigan courts repeatedly conclude that merchandise that is displayed in stores—like the channels in this case—is not within the exclusive control of the stores because the merchandise is constantly handled, relocated, and taken by shoppers.  (ECF No. 19, PageID.483–84).

Defendant cites *Valdes*, *Boyer*, *Vance*, and *Rippy* to support its contention.[4]  (*Id.* at PageID.484).

The Michigan Court of appeals found that *res ipsa loquitur* did not apply where the plaintiff was injured at a Menard's store.  *Valdes v. Menard, Inc.*, 2019 WL 6340263, at *1 (Mich. Ct. App. Nov. 26, 2019).  The *Valdes* plaintiff grabbed a tile sample from one of the individual sample tiles that were at eye level on a shelf.  *Id.*  When she pulled the tile out, another box of tiles weighing about forty pounds fell onto the plaintiff's foot, causing serious injury.  *Id.*  The court reasoned that "[m]erchandise set out on display in a retail store is subject to being handled by customers in the store[.]"  *Id.*  Therefore, the court found that the tile was not in the exclusive control of Menard's.  *Id.*

Similarly, the Michigan Court of Appeals found that *res ipsa loquitur* was not applicable where the plaintiff was injured at a Target store.  *Boyer v. Target Corp.*, No. 251790, 2005 WL 602563, at *1 (Mich. Ct. App. Mar. 15, 2005).  In *Boyer*, the plaintiff reached up to a fireplace display to turn around a price tag and the fireplace screen toppled toward her, bringing down a display of fireplace utensils, one which hit her right arm and shoulder.  *Id.*  The court stated that the

---

[4] Home Depot also cites *Ealey* and *Moore* to support its argument that Plaintiff fails to meet element two. *Ealey v. Rockford Constr. Co.*, No. 1:13-cv-802, 2015 WL 1459228, at *1 (W.D. Mich. Mar. 30, 2015); *Moore v. Target Corp.*, 544 F. Supp. 2d 604, 608 (E.D. Mich. 2008) (Edmunds, J.).  However, neither of these cases address element two of the *res ipsa loquitur* test. *See id.*

equipment was in the control of plaintiff and "countless other shoppers" and not in the defendant's exclusive control.  *Id.* at 2.

In *Vance v. TJX Companies, Inc.*, the plaintiff was at a TJ Maxx store when she turned a comforter around, causing a metal wall hanging to fall on her head, resulting in a nosebleed.  No. 10-13510, 2011 WL 3840341, at *1 (E.D. Mich. Aug. 30, 2011) (Steeh, J.).  The court in *Vance* did not consider whether *res ipsa loquitur* applied, but briefly noted that the metal wall hanging was not in the exclusive control of TJ Maxx, but in the control of the plaintiff and "countless other shoppers," similar to the *Boyer* case.  *Id.* at *4.

This district court found *res ipsa loquitur* inapplicable where the plaintiff went to Home Depot, took a box of tiles from the top of a stack, and another box fell on his foot as he went to lift the box.  *Rippy v. Home Depot U.S.A., Inc.*, 2010 WL 8911154, at *1 (E.D. Mich. Mar. 10, 2010) (Rosen, J.).  The *Rippy* court concluded that *res ipsa loquitur* was inapplicable because the stacked boxes of tile were not within the store's exclusive control and the plaintiff did not present evidence of the store's wrongdoing.  *Id.* at *3 n.6.  The court noted that a customer could have left the boxes in disarray before an employee could walk through and tend to it.  *Id.*

The *Valdes*, *Boyer*, *Vance*, and *Rippy* courts all held that the defendants did not have exclusive control because the products that injured the plaintiffs—the tiles

and the wall hanging—could be handled by other customers.  However, in this case, Ramadan is not just arguing that a product that is often handled by customers injured him.  He is asserting that a fixture installed by Home Depot—the brackets—caused the channels to come loose and hit him. Further, the brackets were not merchandise that was on display for customers like the display in *Boyer*—they were fixed structures installed by Home Depot to hold the raceway channels.

The difference between this case and *Valdes*, *Boyer*, *Vance*, and *Rippy* is further illuminated by the court's decision in the *Correia-Massolo* case.  There the district court agreed that distinctions can be drawn between the actual object that injures a plaintiff and the fixture that was holding the object in place.  In *Correia-Massolo*, the plaintiff injured herself at defendant's store after she raised her hand to check the air flow of a fan and the shelf holding the fan collapsed.  *Correia-Massolo v. Bed Bath & Beyond, Inc.*, No. 08-14857, 2010 WL 3842352, at *1 (E.D. Mich. Sept. 27, 2010) (Tarnow, J.).  The plaintiff argued that even if the fan that fell was not in the defendant's exclusive control, the shelf that the fan was on was in defendant's exclusive control.  *Id.* at 5. The court accepted the plaintiff's argument that the defendant had exclusive control over the shelves because it had installed the shelves as fixtures in the store.  *Id.*

Here, like the defendant in *Correia-Massolo*, Home Depot's MET employees installed the brackets as fixtures in the store.  Although it may be arguable whether the raceway channels were in Home Depot's exclusive control, *Correia-Massolo* supports the conclusion that at least the brackets were in Home Depot's exclusive control because Home Depot installed them as a stable platform to hold the raceway channels.  Dingman repeatedly described the brackets as fixtures in his deposition testimony, suggesting he viewed the brackets as permanent, fixed structures.  (ECF No. 16-7, PageID.210, 212, 215–18, 220, 221).

Further, although Home Depot customers had to possibly touch and unclip the brackets in order to get the raceway channels, the brackets themselves were not subject to much customer manipulation, as it was really the channels that the customer had to manipulate in order to retrieve them.  (*See* ECF No. 16-7, PageID.221, where Dingman stated that the channels had to be shifted in an S shape to remove them from the brackets).  Similarly, it is possible that a customer would touch the shelves in *Correia-Massolo* in order to retrieve product from the shelves; nonetheless, the court accepted the argument that the shelves were in the defendant's exclusive control.  In addition, in both this case and *Correia-Massolo*, the malfunctioning fixture is what allegedly caused the product to hit the plaintiffs.  *Correia-Massolo* thus lends support to the argument that the brackets in this case can be considered fixtures that were in Home Depot's exclusive control.

Further, the fact that an item is on display does not require the conclusion that it is not in the defendant's exclusive control.  *See DeBusscher*, 505 F.3d at 481 (noting that "the basketball goal was on display" in the store and concluding that the defendant retailer had "maintained exclusive possession of the basketball goal" prior to the accident).

The court has surveyed many cases that discussed element two; many of these cases ultimately held that the defendant did not have exclusive control. However, all of these cases are distinguishable from the present case in material ways.

*See Cooper-James v. Texas Roadhouse of Roseville*, No. 293797, 2010 WL 4868059, at *2 (Mich. Ct. App. Nov. 30, 2010) (concluding that a neon and metal sign that fell and hit the plaintiff was not in defendant's exclusive control because anyone could have tugged on or bumped it at any time); *Vachon v. Lowe's Home Ctr.*, No. 252394, 2005 WL 602566, at * 1 (Mich. Ct. App. Mar. 15, 2005) (concluding that brackets were not in the defendant's exclusive control where the plaintiff cut himself attempting to pry brackets apart and therefore was voluntarily controlling the objects that injured him).  The present case is different from *Cooper-James* because it did not involve a fixture.  This case is different from *Vachon* because the plaintiff's conduct in *Vachon* contributed to his injury.

See also *Rogoszewski v. State Lanes, Inc.*, No. 263876, 2006 WL 1185394, at *3 (Mich. Ct. App. May 4, 2006) (finding no exclusive control of a bowling lane where the plaintiff slipped and fell at a bowling alley). In *Hasselbach*, the plaintiff was injured when she was helping her husband bathe and the shower water turned hot. *Id.* at 716. The plaintiff's husband backed away from the water, which knocked the plaintiff down, and her husband fell on her, which broke her leg. *Id.* The plaintiff sued her landlord, alleging that there was a sudden surge of hot water that came from her shower. *See id.* The court found that the plaintiff could not prove exclusive control. *Id.* at 717. The court reasoned that the plaintiff could have accidentally turned the water temperature up when she was trying to turn it down. *Id.* *Rogoszewski* is distinguishable from the present case because it does not involve a display area or fixture; rather it involves a walkway that was free for anyone to walk on. *Hasselbach* can be distinguished from this case because the *Hasselbach* court concluded that the plaintiff could have plausibly caused the accident.

In *Pugno v. Blue Harvest Farms, LLC*, two bundles of unassembled cardboard box pallets fell on the plaintiff, causing Plaintiff to break his hip, among other injuries. 930 N.W.2d 393, 398 (Mich. Ct. App. 2018). The evidence showed that the defendant's owner had stacked the pallets of cardboard. *Id.* at 406. The defendant claimed that its vendors also had control of the pallets, but testimony

showed that the pallets had been at the defendant's warehouse for about a week before the accident occurred.  *Id.*  The court concluded that the evidence sufficiently demonstrated that the defendant was in exclusive control of its premises and the jury could consider a *res ipsa loquitor* theory.  *Id.* at 406–07.

Lastly, the Michigan Court of Appeals also found that *res ipsa loquitur* applied in *Arsenault v. Designer Wearhouse Ctr., Inc.*, No. 316381, 2014 WL 5464883, at * (Mich. Ct. App. Oct. 28, 2014).  The *Arsenault* plaintiff was shopping at the defendant's store and was receiving assistance from an associate to retrieve merchandise from a high wall display.  *Id.* at *1.  A mannequin fell from above and hit plaintiff on her head, left shoulder, and arm.  *Id.*  The court reasoned that the mannequin was in the defendant's exclusive control because it was located high on the wall of the store, beyond the reach of customers.  *Id.*  Although other factors also played a role, both *Pugno* and *Arsenault* demonstrate that the defendant may be more likely to have exclusive control if the defendant is responsible for setting up the instrumentality that injured the plaintiff.   As such, though there is some dispute regarding whether the bent display bracket caused the items to fall, Ramadan has presented sufficient evidence upon which a jury could reasonably conclude that element two has been met.

### 3.  Element Three

Element three of *res ipsa loquitur* requires a showing that the accident did

not occur because of a voluntary action or contribution on the part of the plaintiff.

*Pugno*, 930 N.W.2d at 404.  Ramadan asserts that he did not do anything to cause

the channels to fall on him.  (ECF No. 18, PageID.266).  Home Depot's reply does

not address whether it believes element three is satisfied.  (*See* ECF No. 19,

PageID.482–84).  The court concludes that element three of *res ipsa loquitur* has

been met.

Ramadan's deposition testimony states that he was walking down aisle two

with Evans, looked to the left, and got struck by the raceway channels.  He testified

that he did not bump into the raceway channels, nor did he see anyone else bump

into them.  Additionally, Evans testified that he does not believe that Ramadan

caused the accident to occur.  No contrary evidence shows that Ramadan caused

the accident.  The record therefore supports the conclusion that Ramadan did not

contribute to the accident.  The court finds that element three has been met.

### 4.  Element Four

Element four of *res ipsa loquitur* requires the plaintiff to show that evidence

of the true explanation of the accident is more readily accessible to the defendant

than the plaintiff.  *Pugno*, 930 N.W.2d at 404.  Ramadan contends that element

four is met because the true explanation of the accident was more readily

accessible to Home Depot.  (ECF No.18, PageID.268).  Home Depot employees

chose not to take more photos or preserve evidence after the accident, and further

investigation might have led to a determination as to the true explanation of the

event.  *Id.*  Home Depot's reply does not address whether it believes Ramadan can

satisfy the fourth element of the *res ipsa loquitur* test.  (*See* ECF No. 19,

PageID.482–84).  The court concludes that element four has been met.

In *Moore v. Target*, the plaintiff was injured at a Target store after a plastic

sign fell from the ceiling and struck him on the face and shoulder.  544 F. Supp. 2d

604, 605 (E.D. Mich. 2008) (Edmunds, J.).  The court reasoned that the plaintiff

was provided with all the accident investigation documentation, the photographs

taken by the defendant, and the plaintiff had deposed all of the witnesses identified

in the investigation.  *Id.* at 608.  Thus, the *Moore* court concluded that the plaintiff

had the same level of access to the true explanation of the event as the defendant.

*Id.*

Conversely, in *DeBusscher*, discussed *supra*, the Sixth Circuit concluded

that evidence of the true explanation of the accident was more readily accessible to

the defendant than the plaintiff.  505 F.3d at 481.  The court reasoned that the

defendant maintained exclusive possession of the basketball goal after the accident

and removed it from the display floor after the accident, sending it to the Claims

Department.  *Id.*  The court stated that checking the ballast level in the bottom of

the goal would have been simple, but the defendant failed to undertake that "basic investigative task." *Id.*

Similarly, here, Home Depot had more access to evidence that could have explained why Ramadan's accident occurred, and it failed to properly investigate the accident. Home Depot failed to take many photos of the accident scene. Home Depot also failed to take and/or produce video surveillance of the accident. In addition, Defendant fixed the bent bracket, presumably without the knowledge of Dingman, and failed to conduct further investigation into whether the bent bracket was capable of properly securing the raceway channels. Unlike the plaintiff in *Moore*, Ramadan was not provided with comprehensive accident investigation documentation—Home Depot failed to document the accident in a thorough manner. Similar to the *DeBusscher* defendant, Home Depot failed to undertake simple investigative tasks, such as taking more photos of the accident, having video of the accident, and assessing whether the bend in the bracket rendered it too unstable to hold the raceway channels. Home Depot also replaced the bent bracket and presumably destroyed it. For these reasons, the court concludes that element four of *res ipsa loquitur* has been satisfied.

## 5. Evidence of Wrongdoing

Lastly, for this court to invoke res ipsa loquitur, the Plaintiff must produce some evidence that there was wrongdoing beyond the mere occurrence of the

accident.  *Pugno*, 930 N.W.2d at 404.  The court finds that a genuine dispute of fact exists regarding this element.

In *Moore v. Target Corporation*, the plaintiff was injured at a Target store after a plastic sign fell from the ceiling and struck him on the face and shoulder. 544 F. Supp. 2d at 605.  The plaintiff conceded that the hook holding the sign did not break, become unlatched, and could not have failed.  *Id.* at 608.  The court concluded that *res ipsa loquitur* did not apply because the plaintiff failed to produce evidence of wrongdoing beyond the mere happening of the accident.  *Id.* at 608.

The Michigan Court of Appeals concluded that a plaintiff who got hit by a sign in the defendant's restaurant did not produce any evidence of wrongdoing. *Cooper-James v. Texas Roadhouse of Roseville*, No. 293797, 2010 WL 4868059, at *2 (Mich. Ct. App. Nov. 30, 2010).  The court reasoned that the photographs of the sign showed that anyone could have tugged or bumped the sign at any time.  *Id.*

Here, the Plaintiff has produced evidence of wrongdoing beyond the mere happening of the accident.  Evans testified that Home Depot's MET employees are responsible for setting up the external displays, and the Freight team is responsible for placing the channels into the bracket displays.  Ramadan testified that the raceway channels were not secure in the bracket at the time of his accident.  Evans testified that he saw that the bracket holding the raceway channels was bent when

he went to place the channels back into the bracket after the accident.  He also stated that Home Depot employees are required to inspect the aisles of the store for safety issues, and if raceway channels were not properly secured in the brackets, then that would be an issue that would need to be addressed.  Ramadan testified that Dingman suggested that a hi-lo may have hit the bracket, causing damage. Home Depot even repaired the bent bracket after Ramadan's accident.

This evidence, considered together, may show evidence of wrongdoing, unlike the *Moore* and *Cooper-James* cases where the plaintiffs failed to show how the defendant could have done something wrong.  The evidence here shows that Home Depot employees are tasked with setting up and monitoring the displays. The bracket holding the channels that injured Ramadan was bent and arguably not holding the channels securely, which, according to at least one Home Depot employee, could have been caused by an employee running into the bracket with a hi-lo.  Further, Home Depot employees are supposed to monitor the aisles for safety issues like bent and unsecured brackets.  But according to Ramadan, the bent and possibly unsecure bracket went unnoticed and unfixed by Home Depot. Therefore, this court concludes that Ramadan has demonstrated a genuine issue of fact as to element five.

## V.    CONCLUSION

Ramadan has abandoned his statutory claims against Home Depot.  The court GRANTS summary judgment to Home Depot on Plaintiff's statutory claims and ordinary negligence claim.  The court finds that factual disputes exist regarding whether *res ipsa loquitur* applies in this case.  Therefore, Ramadan may present his *res ipsa loquitur* theory to the trier of fact in order to advance his argument that Defendant is liable for premises liability.  The trier of fact will thereafter decide if *res ipsa loquitur* applies to this case.  *See Morris*, 330 F.3d at 862. Therefore, the court DENIES Home Depot's Motion for Summary Judgment on Ramadan's premises liability claim.

**SO ORDERED**.


Dated:        November 30, 2020

s/Stephanie Dawkins Davis
HON. STEPHANIE DAWKINS DAVIS
United States District Court Judge